TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0331-KB

IN RE:  GLENN MARTIN HAMMOND

IN SUPREME COURT

## **OPINION AND ORDER**

Respondent, Glenn Martin Hammond, whose Kentucky Bar Association (KBA) Member Number is 86174, was admitted to practice law in Kentucky on May 1, 2006.  His bar roster address is 5476 North Mayo Trail, P.O. Box 1109, Pikeville, Kentucky 41502.  The Board of Governors of the KBA (Board) considered multiple charges of professional misconduct arising from two separate disciplinary actions and, by a vote of 13-5, found Hammond guilty of three ethical violations.  By the same vote, the Board has recommended Hammond receive a public reprimand, attend ethics school involving supervision of employees and keeping clients informed, and bear the costs of these proceedings.  Neither the KBA nor Hammond have requested further review pursuant to SCR[1] 3.370(8), and we decline to conduct independent review pursuant to SCR 3.378(9).  Thus, we adopt the decision of the Board pursuant to SCR 3.378(10).

---

[1] Rules of the Supreme Court.

## FACTS AND PROCEDURAL HISTORY

## A. KBA File 18-DIS-0256

William Compton and Donald Bentley hired Hammond to pursue various personal injury claims against Signature Healthcare and others on behalf of a deceased relative's estate. While Hammond initially met with both Compton and Bentley, he primarily communicated with Compton. Compton and Bentley purportedly filled out an intake form and signed a contingency fee agreement. However, Hammond claims these documents, which his office routinely handles, were lost during the transition from a paper-based filing system to electronic recordkeeping.

Hammond obtained the decedent's medical records and evaluated the facts of the matter. Because the estate had been administratively closed, Hammond took the appropriate steps to revive any potential claims and eventually filed suit in Floyd Circuit Court.

Upon commencing the action, Hammond prosecuted the case by taking depositions, retaining experts, answering interrogatories, and otherwise preparing for trial. He also pursued settlement negotiations. Four years elapsed between the filing of suit and the beginning of trial. The delay was attributed to several continuances, including the unavailability of expert witnesses and a tampered jury pool.

During the discovery phase, Hammond sent medical records and bills to Signature Healthcare but failed to provide a requested itemization of the total amount of damages until the night before the first day of trial. Signature

Healthcare moved the trial court to preclude any claim for damages at trial pursuant to CR[2] 8.01(2)[3] and the trial court's discovery orders.[4] At the hearing on the motion, Hammond argued his production of medical bills and other records placed Signature Healthcare on notice as to the amount of damages. The trial court disagreed and concluded Hammond's failure to timely supplement his responses to interrogatories materially prejudiced Signature Healthcare's defense. Thus, the trial court granted Signature Healthcare's motions to preclude the claims for damages. Faced with this bleak prospect, Hammond conferred with his clients and, after a short break, moved to dismiss the case in open court.[5] The trial court orally granted Hammond's motion to dismiss and ordered Signature Healthcare to tender a proposed order to that effect. Signature Healthcare tendered the required order, however, the trial court did not immediately sign the order of dismissal for reasons undisclosed by the record.

At this point, Hammond advised Compton and Bentley that they could contact his malpractice insurance carrier to pursue recovery for their claims,

---

[2] Kentucky Rules of Civil Procedure.

[3] CR 8.01(2) provides in pertinent part that the amount of unliquidated damages claimed by a plaintiff "shall not exceed the last amount stated in answer to interrogatories; provided, however, that the trial court has discretion to allow a supplement to the answer to interrogatories at any time where there has been no prejudice to the defendant."

[4] The trial court ordered the parties to disclose estimates of damage totals 30 days prior to trial.

[5] Hammond specifically told his clients "the judge dismissed everything because of the paperwork not being in . . . time." He also told the clients he believed the judge was biased for political reasons.

although they did not avail themselves of this option. Approximately four months later, Signature Healthcare filed a motion for a status conference to address the lack of a final order dismissing the case. Hammond responded and filed a motion pursuant to CR 60.02 requesting the trial court to re-docket the case. As grounds for the motion, Hammond again argued that he had complied with the applicable rules and orders and further accused Signature Healthcare's trial attorneys of fraudulently misrepresenting the pertinent facts. The trial court refused to re-docket the case and entered an order of dismissal. The Court of Appeals dismissed Hammond's subsequent appeal as being improperly taken from a voluntary dismissal.

Despite the dismissal of the appeal, Hammond subsequently secured a settlement with Signature Healthcare for $35,000.00, to be paid to Compton and Bentley in five installments. In addition to the settlement, Hammond secured a waiver of Medicare lien that had been placed upon the estate. Hammond did not take any fee from the settlement but requested reimbursement of expenses. Compton was the only administrator of the estate who signed the settlement release. Bentley had no knowledge of the settlement or the terms of the distribution. The record is unclear whether Hammond failed to properly inform Bentley or whether Bentley voluntarily ceased communicating with Hammond.

Bentley filed a bar complaint on September 7, 2018. Following an investigation, the Inquiry Commission charged Hammond with violating:

4

(1) SCR 3.130(1.1) and (1.3) by failing to provide competent representation to the estate and by failing to diligently proceed with its case;

(2) SCR 3.130 (1.5)(b) and/or (1.5)(c) by failing to communicate the basis or rate of the fee within a reasonable time after commencing the representation and/by failing to reduce a contingent fee agreement to a writing signed by the client; and

(3) SCR 3.130 (8.1)(a) and (8.4)(c), by knowingly making a false statement of material fact in connection with this disciplinary matter.

The Inquiry Commission later amended the charges to allege an additional count of violating of SCR 3.130(8.1)(a) and (8.4)(c) by submitting fraudulent documents in connection with this disciplinary matter. Prior to a hearing on the matter, the KBA agreed to dismiss the charges pertaining to false statements and fraudulent documentation.

## B. KBA File 20-DIS-0012

In 2016, Johnny and Cindy Patton[6] contacted Hammond about a possible claim relating to defective coal dust masks. Johnny left the last mask he used with Hammond. After Johnny passed away in 2017, Cindy contacted Hammond's office and executed the necessary paperwork to continue the pursuit of the case. For over a year, she repeatedly attempted to contact Hammond for additional information but did not receive a response other than more time was needed because the case was being pursued as a class action. Cindy spoke to another lawyer who advised her in a hypothetical situation that a statute of limitations issue could affect her ability to pursue the claim.

---

[6] For clarity, we will refer to the Pattons by their first names.

On September 24, 2019, Cindy went to Hammond's office and spoke with a staff person who informed her that another staff member, Daniel Thacker, would call her the following day. At the time, Thacker had graduated from law school but had not passed the bar exam. Thacker called Cindy on September 30. On October 8, 2019, Cindy met with Thacker to discuss the statute of limitations issue and other matters pertaining to the case. It later became apparent that Thacker had provided Cindy inaccurate information. At Cindy's request, Thacker returned the dust mask Johnny had previously left with Hammond.

A week after the meeting, Cindy sent a certified letter to Hammond and Thacker asking whether the suit had been filed. Thacker was either fired or resigned in late 2019. Cindy filed a bar complaint in December 2019, after her letter to Hammond and Thacker went unanswered.

Following an investigation, the Inquiry Commission charged Hammond with violating:

(1) SCR 3.130(5.3) by failing to appropriately instruct and/or supervise his unlicensed law clerk; and

(2) SCR 3.130(1.4) by failing to communicate and adequately respond to a client's requests for information.

In May 2020, Hammond filed the class action suit, including the claim for the estate of Johnny Patton. This matter remains ongoing, and Hammond continues to represent Cindy.

6

## C. Proceedings before the Trial Commissioner and Board

By order, the Inquiry Commission determined the charges arising from the separate disciplinary files should be consolidated and heard together before a trial commissioner. Pertinent to KBA File 18-DIS-0256, the trial commissioner found Hammond did not violate the rules on competence and diligence essentially reasoning that simple negligence, without more, does not establish an ethical violation. Additionally, the trial commissioner noted any delay caused by the multiple continuances were due to legitimate reasons beyond Hammond's control. The trial commissioner further found Hammond guilty of violating SCR 3.130 (1.5)(b) and/or (c) with regard to his failure to communicate the fee agreement to Bentley based on the lack of written documentation and the clear evidence that Bentley had no knowledge of the settlement or how the proceeds would be distributed.

Relative to KBA File 20-DIS-0012, the trial commissioner found Hammond guilty of violating SCR 3.130(5.3) by failing to appropriately instruct and/or supervise his unlicensed law clerk, and SCR 3.130(1.4) by failing to communicate and adequately respond to a client's requests for information. These findings were based on Hammond's testimony that he had no idea what Thacker had told Cindy at the time of the meeting, but admitted he later learned Thacker provided her with inaccurate information and inappropriately returned key evidence. Additionally, the trial court commissioner found Hammond did not adequately communicate with Cindy for an extended period of time despite her repeated requests for updates and information.

7

After considering Hammond's prior disciplinary history including a private reprimand for similar misconduct, the trial commissioner recommended a cumulative sanction in the form of a public reprimand, attending ethics school, and bearing the costs of these proceedings. On review, the Board determined, by a vote of 13-5, that the trial commissioner's findings were supported by substantial evidence and should be adopted. By the same vote, the Board accepted the trial commissioner's recommended sanction.

## ADOPTION OF THE BOARD'S ORDER

The Board's findings appear to be adequately supported by the record and its recommended sanction of a public reprimand with conditions is appropriate. *Riley v. Kentucky Bar Ass'n*, 262 S.W.3d 203 (Ky. 2008) (concluding public reprimand was an appropriate sanction for failing to keep a client adequately informed); *Webster v. Kentucky Bar Ass'n*, 183 S.W.3d 174, 176 (Ky. 2006) ("[W]e expect that with this public reprimand [attorney] will not take such [contingency] fees again without a written client agreement as stated in that rule."); *Croley v. Kentucky Bar Ass'n*, 176 S.W.3d 136, 137 (Ky. 2005) (concluding public reprimand was an appropriate sanction for failure to supervise nonlawyer staff). We find additional support for the Board's imposition of a public reprimand based on Hammond's disciplinary history. Previously, Hammond received a private admonition for similar misconduct when he failed to keep a client adequately informed and failed to reduce a contingency fee agreement to writing.

8

Therefore, it is hereby ORDERED:

(1) Glenn Martin Hammond is publicly reprimanded for violations of SCR 3.130 (1.4); SCR (1.5)(b) and/or (1.5)(c); and SCR 3.130(5.3);

(2) Hammond shall attend, at his own expense, ethics school involving supervision of employees and keeping clients informed; and

(3) Pursuant to SCR 3.450, Hammond is directed to pay all costs associated with these disciplinary proceedings in the amount of $3,822.26, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. All concur.

ENTERED: October 24, 2024.

_____
CHIEF JUSTICE